[Civ. No. 3249. Third Appellate District.—December 20, 1927.]

W. A. BRANDENBURGER, as Trustee, etc., Respondent, v. ELDON CHIPMAN, Appellant.

Thomas B. Leeper for Appellant.

Ralph H. Lewis and Hughes, Bradford, Cross & Prior for Respondent.

WEYAND, J., *pro tem.*—Charles C. Studarus and Charles C. Studarus, Jr., were copartners doing business as farmers, under the name of Charles Studarus & Son. On October 15, 1924, they filed their petition in bankruptcy in the United

States district court for the northern district of California, and said partnership was on that day adjudicated a bankrupt. Their farming operations had, prior to the adjudication in bankruptcy, been conducted in Sacramento and Yolo Counties. The plaintiff above named, the trustee in bankruptcy, is the respondent herein, and he will be referred to hereafter as the trustee. Studarus & Son will be referred to as the bankrupts.

The trustee above named, by an amended complaint filed in the superior court of Sacramento County, on October 27, 1925, sought to recover from Eldon Chipman, the appellant, the sum of fifteen hundred dollars, which sum was by the trustee averred to be property of the estate of the bankrupt partnership, and illegally held by the defendant Eldon Chipman.

Judgment in the lower court was in favor of the trustee, and the defendant Chipman appeals to this court.

The complaint contains three causes of action. In the first cause of action it is alleged that the bankrupt firm paid the defendant Chipman the sum of fifteen hundred dollars, on or about the tenth day of October, 1924, upon an indebtedness, "claimed" by the bankrupt partnership, to be due Chipman. By proper averments this is stated to be void, as it permitted a preference to be given Chipman. The second count states that for more than two years next preceding the 10th of October, 1924, the partnership was insolvent, and that defendant Chipman knew of that condition. It is then alleged that on or about August, 1923, this being more than a year before the adjudication in bankruptcy, Chipman, to aid the bankrupt partnership to conceal its property, accepted from the partnership an assignment of the sum of fifteen hundred dollars, due to the partnership, from a debtor of the partnership, and that defendant Chipman received that sum of money, the property of the partnership, upon an understanding that he, Chipman, was to hold the same for the partnership and thus conceal the same from the partnership creditors. The third cause of action in said complaint is upon the common count for money had and received by Chipman for the use and benefit of said copartnership.

The answer of defendant Chipman denies these allegations, in so far as any illegal or improper conduct of Chip-

man is concerned. The defendant further answers to the effect that the fifteen hundred dollars received by him was reloaned to the partnership and was, by the partnership, used in the production of a crop, which the trustee received, and that even if Chipman's receipt of the fifteen hundred dollars was void as against creditors, yet the creditors got the benefit of the crop upon which it was spent, and therefore that sum should be allowed as an offset to the money paid Chipman. To further illustrate the force of this claim, we will here state that on January 1, 1923, as appellant contends, the partnership gave him a note for fifteen hundred dollars, which was given to cover a number of small sums of money previously loaned by Chipman to the partnership. On August 14, 1923, the partnership did actually give Chipman an order on the Guernsey-Ames Grain Co. for the sum of fifteen hundred dollars, which order was by the grain company accepted two days thereafter, and which order was paid by the company a few days before the adjudication in bankruptcy, more than a year after it was given to Chipman. Chipman alleges he in turn reloaned this very sum to the partnership and they used it to produce a certain crop, which the trustee in bankruptcy took over.

We will eliminate from this case matters with which we need not concern ourselves. ▮ As to the first cause of action, we are of the opinion that the date of payment to Chipman was at latest August 14, 1923, when he received the order on the grain company. This was more than four months before the adjudication in bankruptcy. Therefore that cause of action should fail, as it is predicated upon a payment within four months before the adjudication.

As to the offset claimed by defendant, the decision of the lower court cannot be disturbed. This money was paid by the grain company to Chipman on the day before the adjudication. The defendant's bank account shows it was by Chipman deposited after the adjudication. It could not have been used for the benefit of the trustee. It is claimed by Chipman that the reloan was made to the wife of Studarus, Jr. However, the crop upon which Mrs. Charles C. Studarus, Jr., used one thousand dollars of the money paid her by Chipman (according to Mrs. Studarus' testimony) failed to mature and therefore nothing was received there-

from. A loan of seven hundred dollars made to Mrs. Studarus, by Chipman, was made in November, 1922, antedating even the note of fifteen hundred dollars. The ruling of the trial court was correct upon this issue.

The main contention in this case, as we view it, is the one made by plaintiff's second cause of action and the denial thereto. As we view the testimony, the trial court was amply sustained by the evidence in its holding that the note, the assignment and the subsequent receipt of the fifteen hundred dollars by Chipman from the Guernsey-Ames Grain Company were all transactions fraudulently contrived and arranged so as to place fifteen hundred dollars of the partnership money into the hands of Chipman, to hold the said money for the partnership, or for its members.

The transaction has upon its face nearly all the usual badges of fraud. The trial court heard the witnesses, and had occasion to observe their manner upon the stand. The charge of fraud is usually made out solely from statements and acts of the perpetrators of the fraud.

In this transaction there was secrecy by the parties. No person saw or participated in the alleged dealings excepting Charles C. Studarus, Jr., his wife, and defendant Chipman. The dealings were apparently unknown by the elder Studarus. The transaction was wholly unusual. Studarus, Jr., testifies he never kept an itemized list of his small borrowings from Chipman, that in January, 1923, had reached the sum of fifteen hundred dollars. Although Chipman had a bank account, these small loans were paid to Studarus, Jr., in cash, from Chipman's pocket. The assignment given to Chipman did not include the interest expressed in the note. In August, when this assignment was given, there was overdue interest from January 1, 1923, to the middle of August that year. Chipman testifies he never kept the dates of the small loans to Studarus, Jr. The testimony of Chipman is that the items of these small loans were kept in a small pocketbook, but he testifies the book was lost after the note was executed. At all the times, from before the execution of the note in January, 1923, until the adjudication in bankruptcy, Chipman knew of the financial straits of the partnership, yet no security for the note was taken.

An effort to give a transaction an appearance of fairness is frequently made. In the order of August, 1923, the first paper that came into the view of outsiders, an attempt is apparently made to give it a certificate of *bona fides.* After the wording of the order, in usual form, and the signature, an added paragraph says, "this sum is covered with a note dated January 1, 1923, due July 15, 1923." Another assignment, against the same fund, given by the bankrupts, at the same time, to pay another note due to a mercantile firm in Sacramento, does *not* mention a note.

Dealing in such manner with a party in financial difficulties of itself indicates how wholly irregular the instant matter was.

There are some other circumstances indicating fraud, but it is wholly unnecessary to go into all the circumstances. The testimony supports the findings and judgment of the trial court.

The judgment is affirmed.

Plummer, J., and Hart, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 19, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 16, 1928.

All the Justices concurred.